# United States Court of Appeals for the Federal Circuit

2007-5107

JANE DOE 1, JANE DOE 2,
and JANE DOE 3, on behalf of themselves
and all others similarly situated,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

## Judgment

ON APPEAL from the United States Court of Federal Claims

in CASE NO(S) 03-CV-2459.

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**AFFIRMED.**

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By: [signature] Date: 3/17/08

ENTERED BY ORDER OF THE COURT

DATED JAN 22 2008

[signature]
Jan Horbaly, Clerk

ISSUED AS A MANDATE: MAR 14 2008

# United States Court of Appeals for the Federal Circuit

2007-5107

JANE DOE 1, JANE DOE 2,
and JANE DOE 3, on behalf of themselves
and all others similarly situated,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Bruce A. Finzen, Robins, Kaplan, Miller & Ciresi L.L.P., of Minneapolis, Minnesota, argued for plaintiffs-appellants. Of counsel was Brent J. Kaplan.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Mary Ellen Coster Williams

# United States Court of Appeals for the Federal Circuit

2007-5107

JANE DOE 1, JANE DOE 2,
and JANE DOE 3, on behalf of themselves
and all others similarly situated,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 03-CV-2459,
Judge Mary Ellen Coster Williams.

---

DECIDED: January 22, 2008

---

Before LOURIE, BRYSON, and MOORE, Circuit Judges.

BRYSON, Circuit Judge.

I

The appellants in this case are employees of the Social Security Administration ("SSA"). They brought this action in the Court of Federal Claims, alleging that the SSA's practice of granting employees credit hours and compensatory time for overtime work violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and constitutes a breach of the National Agreement, a collective bargaining agreement between the SSA and the American Federation of Government Employees, AFL-CIO.

The SSA grants its employees credit hours to allow them to work on flexible schedules. The National Agreement defines "credit hours" as "hours worked in excess of an employee's basic work requirement in which an employee on a flexible work schedule elects to work so as to vary the length of a succeeding work day or workweek." An SSA employee receives one credit hour for each hour worked in excess of the employee's basic work requirement. An employee may reserve a balance of up to 24 credit hours; any credit hours earned once an employee has a balance of 24 credit hours must be used before the end of the next two-week pay period. The SSA does not provide monetary compensation for credit hours that are not used. If an employee receives credit hours for work in excess of 40 hours in a workweek, those hours are, by statutory definition, not considered overtime hours. 5 U.S.C. § 6121(6).

The SSA also allows its employees to receive "compensatory time" in lieu of overtime pay. The SSA grants one hour of compensatory time for each hour an employee works in excess of 40 hours in a workweek. If an employee has not used his or her compensatory time after eight pay periods, the employee is paid for the compensatory time at a rate equal to one and one-half times the employee's regular rate of pay.

Because the appellants' positions are classified by the Office of Personnel Management ("OPM") as non-exempt from the FLSA, their employment is covered by both Title 5 and the FLSA. The complaint alleged that the appellants received a combination of credit hours and compensatory time for hours worked in excess of 40 hours in a workweek. They received credit hours and compensatory time at a rate of one hour for each hour of overtime work, and they used their credit hours and

compensatory time for time off from work. According to the complaint, the appellants elected to receive compensatory time instead of overtime payment. They did not allege that they were prevented by the SSA from receiving monetary compensation. Nevertheless, the appellants argue that the National Agreement and the FLSA do not permit the SSA to grant credit hours and compensatory time to non-exempt employees. Alternatively, the appellants argue that, if the SSA has authority to grant credit hours and compensatory time to non-exempt employees, the FLSA requires that non-exempt employees receive one and one-half hours in compensatory time or credit hours for each hour worked in excess of 40 hours in a workweek.

The Court of Federal Claims dismissed the appellants' breach of contract claim for failure to state a claim upon which relief could be granted. The court also dismissed the appellants' FLSA claim pertaining to credit hours on the same ground. With respect to compensatory time, the court requested that the appellants amend their complaint to specify whether their overtime work was irregular or occasional, as opposed to being scheduled in advance, because different legal standards apply to overtime work in those two categories. In response to the court's request, the parties filed a joint stipulation asking the court for a "without prejudice" dismissal of the appellants' FLSA claim as applied to compensatory time granted for overtime hours scheduled in advance. The stipulation characterized the compensatory time claim for irregular overtime hours (i.e., hours not scheduled in advance) as having been dismissed for failure to state a claim. The trial court then entered an order "in accordance with the parties' stipulation" dismissing "the remaining claims without prejudice." The appellants now appeal the trial court's dismissal of (1) their breach of contract claim, (2) their FLSA

claim with respect to credit hours, and (3) their FLSA claim with respect to compensatory time for irregular overtime work.

II

As an initial matter, the government argues that we do not have jurisdiction to hear this appeal under 28 U.S.C. § 1295 because there is no appealable final order. The government's argument on this issue requires resolution of two issues.

A

First, the government contends that the appellants' entire compensatory time claim under the FLSA was voluntarily dismissed without prejudice. Although there appears to be some confusion on this issue in light of the wording of the judgment, we do not understand the entire compensatory time claim to have been dismissed without prejudice. The trial court's January 12, 2007, order stated that "[i]f Plaintiff's overtime was irregular, and occasional, it would fall within [the Federal Employees Pay Comparability Act's] authorization permitting comp time in lieu of FLSA pay for such overtime, and Plaintiffs would not be entitled to relief." Because the complaint did not specify whether the appellants' overtime hours were scheduled, or whether they were irregular and occasional, the court invited the appellants to amend their complaint and to seek recovery separately for any overtime hours that were scheduled. The appellants, however, decided not to amend their complaint because the bulk of their overtime hours were irregular and occasional (i.e., not scheduled). Instead, they sought to have their compensatory time claim with respect to scheduled hours dismissed without prejudice in order to have the trial court enter a final judgment in the case without consideration of the claim as applied to any scheduled hours. After a

conference on the matter, the government agreed to a joint stipulation treating the January 12, 2007, order as dismissing the claim regarding irregular overtime for failure to state a claim. The stipulation further requested that the trial court dismiss without prejudice any claim that was not dismissed by the January 12, 2007, order. The trial court's judgment states that the "[p]laintiffs' FLSA claim with respect to comp time is dismissed, without prejudice." In light of the parties' joint stipulation, however, we understand the FLSA claim with respect to compensatory time that was granted for unscheduled overtime to have been dismissed for failure to state a claim. To the extent that the trial court's judgment is read as being broader than that, we interpret the appellants' appeal to include an objection to including the unscheduled overtime FLSA claim within the "without prejudice" dismissal. Because the judgment was intended to reflect the parties' stipulation, we hold that the dismissal without prejudice should extend only to the portion of the FLSA claim pertaining to scheduled overtime.

B

Second, the government contends that the judgment is not final because the claims that were not dismissed for failure to state a claim were dismissed voluntarily and without prejudice. In the government's view, the judgment is not final because the claims that were dismissed voluntarily and without prejudice were not adjudicated. In support of its argument, the government relies on cases from the Second, Fifth, Seventh, and Eleventh Circuits that have found jurisdiction lacking when unresolved claims are voluntarily dismissed without prejudice. See Rabbi Jacob Joseph Sch. v. Province of Mendoza, 425 F.3d 207, 210 (2d Cir. 2005) ("immediate appeal is unavailable to a plaintiff who seeks review of an adverse decision on some of its claims

by voluntarily dismissing the others without prejudice." (emphasis in original)); Marshall v. Kansas City S. Ry. Co., 378 F.3d 495, 499-500 (5th Cir. 2004) ("a party cannot use voluntary dismissal without prejudice as an end-run around the final judgment rule" (emphasis in original)); West v. Macht, 197 F.3d 1185, 1189 (7th Cir. 1999) ("The recent cases disallowing a sort of manufactured finality like that found in the present lawsuit are consistent with the fundamental policy disfavoring piecemeal appeals. Hence, West's voluntary dismissal without prejudice is under current law insufficient to create a final judgment."); State Treasurer v. Barry, 168 F.3d 8, 11 (11th Cir. 1999) ("appellate jurisdiction over a non-final order cannot be created by dismissing the remaining claims without prejudice").

Our court has not adopted that position. In Nystrom v. Trex Co., 339 F.3d 1347 (2003), we addressed a claim of patent infringement that was dismissed on summary judgment of noninfringement. Id. at 1349. The defendant had filed a counterclaim for a declaratory judgment of invalidity and unenforceability, but the district court did not reach those issues. Id. Instead, the court entered judgment for the defendant and stayed the counterclaim pending appeal. Id. Because the counterclaim remained pending, we held that the summary judgment order was not an appealable final judgment. Id. at 1351. We discussed, however, four "avenues of appeal" that the district court could have followed for the parties to have an appeal "as a matter of right." Id. at 1350-51. One of those avenues was that "the district court could have dismissed the counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-infringement." Id. at 1351.

In this case, we see no reason to disavow our statement in Nystrom regarding dismissals without prejudice. Several other circuits have also declined to follow a bright line rule that judgments must always be treated as nonfinal whenever unresolved claims are voluntarily dismissed without prejudice. In James v. Price Stern Sloan, 283 F.3d 1064, 1069-70 (9th Cir. 2002), the Ninth Circuit reviewed the split among the circuits on this issue, and adopted a rule that "when a party that has suffered an adverse partial judgment subsequently dismisses remaining claims without prejudice with the approval of the district court, and the record reveals no evidence of intent to manipulate our appellate jurisdiction, the judgment entered after the district court grants the motion to dismiss is final and appealable." In adopting that rule, the James court followed the Sixth Circuit's approach in Hicks v. NLO, Inc., 825 F.2d 118 (6th Cir. 1987), and the Eighth Circuit's approach in Chrysler Motors Corp. v. Thomas Auto Co., 939 F.2d 538 (8th Cir. 1991). See James, 283 F.3d at 1069-70. In those cases, the courts exercised appellate jurisdiction over cases in which the district court had entered final judgment at the parties' request by dismissing remaining claims without prejudice. Hicks, 825 F.2d at 120 ("we hold that plaintiff's dismissal with the concurrence of the court of the only count of her complaint which remained unadjudicated imparted finality to the District Court's earlier order granting summary judgment."); Chrysler Motors, 939 F.2d at 540 (same). The James court also noted that, although the Seventh Circuit has declined to exercise jurisdiction in appeals following a dismissal without prejudice, "it has done so only where the record revealed that the district court and the parties have schemed to create jurisdiction over an essentially interlocutory appeal." 283 F.3d at

1069 (citing United States v. Kaufmann, 985 F.2d 884 (7th Cir. 1993), and Horwitz v. Alloy Auto Co., 957 F.2d 1431 (7th Cir. 1992)).

Adopting a more flexible approach to the final judgment rule, the court in James ruled that it had jurisdiction over the appeal of a partial summary judgment that was made final after the district court dismissed the remaining claims without prejudice. The appellee, Price Stern, argued that the appellant, James, should not have been permitted to create a final judgment, and circumvent Federal Rule of Civil Procedure 54(b), by having the unadjudicated claims dismissed without prejudice. The Ninth Circuit rejected that argument because the record showed that the remaining claims made up only a small subset of James's entire case, such that a trial on the remaining claims "would not be an efficient use of time and resources." Id. at 1068. Moreover, the court found nothing in the record to suggest that James attempted to circumvent Rule 54(b) or the final judgment rule. Unlike cases in which finality was manufactured by entering a stipulation to permit an appellant to keep "dismissed claims on ice," James's appeal came "with the risk that, by the time the case returns to the district court, the claim will be barred by the statute of limitations or laches." Id. at 1066.

Likewise, here, the appellants have stated that the vast majority of their overtime was irregular and occasional, for which the trial court ruled they would not be entitled to relief. In a letter to the trial court, the appellants stated:

> It is our understanding that some portion of the overtime was scheduled in advance of the work week. However, rather than litigate only a small part of the claim that Plaintiffs have brought, the value of which may not justify the burden and expense our clients would face in pursuing only this limited claim, and in the interest of judicial economy, we respectfully request that the Court enter a Final Order granting the Defendant's Motion.

The appellants have explained that their remaining claim is of minor significance and is not worth taking through trial, and in their reply brief in this court they expressed their intention to drop that claim in the event that the trial court's judgment on the other claims is affirmed. Thus, treating the trial court's judgment as an appealable final judgment would not be inconsistent with the federal policy against piecemeal litigation. Additionally, by allowing their claim as to scheduled overtime to be dismissed without prejudice, the appellants have run the risk that all or part of that claim will be barred by the statute of limitations if they seek to assert it at a later date. We therefore follow the court's approach set out in this court's decision in Nystrom and hold that we have jurisdiction over this appeal.

III

The appellants' principal argument on the merits is that the SSA breached the National Agreement by granting employees who are not exempt from the FLSA compensatory time and credit hours instead of overtime pay. The appellants allege that the SSA breached Article 10, Section 3, Paragraph D of the Agreement, which provides that an employee covered by the FLSA and Title 5 is entitled to receive overtime compensation under whichever statute provides the greater benefit to the employee. Because Title 5 permits agencies to grant their employees compensatory time or credit hours, while the FLSA does not, the appellants argue that monetary compensation for overtime compensation under the FLSA is the "greater benefit" for non-exempt employees.

The Court of Federal Claims dismissed the appellants' breach of contract claim for lack of subject matter jurisdiction. On appeal, the appellants contend that both the

Tucker Act and the Civil Service Reform Act ("CSRA") provide the Court of Federal Claims with jurisdiction to hear their breach of contract claim. The Tucker Act grants the Court of Federal Claims jurisdiction to hear claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Relying on the federal policy favoring "labor organizations and collective bargaining in the civil service," 5 U.S.C. § 7101, the appellants argue that the Court of Federal Claims has jurisdiction to hear their breach of contract claim because they are covered by the National Agreement, a contract between the government and the American Federation of Government Employees. We reject that argument because, although the Agreement grants certain rights to SSA employees, Article 24 provides a grievance procedure that "is the exclusive procedure available to bargaining unit employees, the Union or the Administration for the resolution of grievances." Therefore, any rights granted to SSA employees by the Agreement that are subject to the grievance procedure are not rights that an employee can enforce by suit in the Court of Federal Claims. See Todd v. United States, 386 F.3d 1091, 1094-95 (Fed. Cir. 2004) (holding that the Court of Federal Claims lacked jurisdiction to hear a Federal Aviation Administration employee's breach of contract claim based on a collective bargaining agreement).

To the extent that the appellants seek to enforce their employment rights under the FLSA or Title 5 through a breach of contract claim, the Court of Federal Claims correctly dismissed that claim for lack of subject matter jurisdiction because, as federal employees, the appellants "derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985); accord

Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004); Collier v. United States, 379 F.3d 1330, 1331 (Fed. Cir. 2004); Schism v. United States, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002) (en banc); Hamlet v. United States, 63 F.3d 1097, 1102 (Fed. Cir. 1995); Zucker v. United States, 758 F.2d 637, 640 (Fed. Cir. 1985).

The appellants do not dispute that their employment is by appointment. Instead, they argue that in Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2002), and O'Connor v. United States, 308 F.3d 1233 (Fed. Cir. 2002), we held that the Court of Federal Claims has jurisdiction over claims arising under the provisions of collective bargaining agreements. Neither of those cases, however, involved breach of contract claims. Rather, the plaintiffs in both cases sought adjudication of claims based on the FLSA. We held that those claims were not barred by the CSRA because the 1994 amendments to the CSRA established a federal employee's right to seek a judicial remedy for statutory claims even if those claims could also be raised as grievances subject to the negotiated procedures in the applicable collective bargaining agreement. Mudge, 308 F.3d at 1227; O'Connor, 308 F.3d at 1239-40.

Before it was amended in 1994, the CSRA provided that a collective bargaining agreement's grievance procedures would "be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (1988). Based on that language, we held in Carter v. Gibbs, 909 F.2d 1452, 1458 (Fed. Cir. 1990) (en banc), that federal employees subject to a collective bargaining agreement could not seek judicial enforcement of FLSA claims that were covered by the collective bargaining agreement's grievance procedures. In the 1994 amendments to the CSRA, Congress amended section 7121(a)(1) to state that grievance procedures set forth in a CBA "shall

be the exclusive administrative procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (2000) (emphasis added); see Mudge, 308 F.3d at 1223. Based on that change in the statutory language, we held in Mudge that section 7121(a)(1) no longer prevents federal employees subject to a collective bargaining agreement from seeking a judicial remedy for claims arising under the FLSA or other laws or regulations. 308 F.3d at 1227. That holding, however, does not imply that the amendment to section 7121 provides a jurisdictional basis for the Court of Federal Claims to hear the appellants' breach of contract claim. Rather, those cases held that section 7121(a)(1) no longer bars judicial recovery for claims that otherwise fall within the Court of Federal Claims' jurisdiction. Because the Tucker Act does not provide a jurisdictional basis for the appellants' breach of contract claim in the first place, it is irrelevant that the CSRA would not present an additional bar to the Court of Federal Claims' exercise of jurisdiction over that claim.

IV

In addition to their breach of contract claim, the appellants sought relief directly under the FLSA, alleging that the SSA's practice of granting credit hours and compensatory time violates the FLSA's overtime compensation requirements. The appellants argue that, even if the SSA has the authority to grant compensatory time and credit hours under Title 5, they must be compensated monetarily. As non-exempt employees, they argue, they are covered by the FLSA, which does not authorize federal agencies to grant compensatory time or credit hours in lieu of overtime compensation. Alternatively, the appellants argue that they are entitled to receive one and one-half hours of compensatory time for each hour of overtime worked, rather than only one

hour of compensatory time for every hour of overtime. We reject those arguments because Title 5 plainly permits agencies to grant compensatory time and credit hours to non-exempt employees on an hour-for-hour basis.

A

The appellants base their argument on the relationship between the FLSA and the Federal Employees Pay Act, 5 U.S.C. §§ 5541-5550a ("FEPA"). Section 5542(a) of FEPA provides that federal agencies must provide overtime pay to their employees for "hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or . . . in excess of 8 hours in a day." Subsections (a)(1)-(5) of section 5542 specify the rates at which an agency's employees are to be paid. Before 1974, overtime compensation for federal employees was governed exclusively by FEPA. Aaron v. United States, 56 Fed. Cl. 98, 100 (2003). In that year, Congress enacted the Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 6(a), 88 Stat. 55, which extended FLSA coverage to federal employees. For federal employees who held positions that were not expressly exempted from the FLSA, agencies ensured compliance with both FEPA and the FLSA by requiring that compensation be computed under both statutes and paying the non-exempt employees the greater amount. See, e.g., Alexander v. United States, 32 F.3d 1571, 1575-76 (Fed. Cir. 1994). In 1990, FEPA was amended by the Federal Employees Pay Comparability Act ("FEPCA"), Pub. L. No. 101-509, § 210, 104 Stat. 1389. Among other changes, FEPCA amended section 5542 by adding subsection (c). Following an amendment in 1992, that section now provides as follows:

> Subsection (a) [which requires that federal employees be paid overtime pay for work in excess of eight hours in a day or 40 hours in a week] shall

> not apply to an employee who is subject to the overtime pay provisions of section 7 of the Fair Labor Standards Act of 1938. In the case of an employee who would, were it not for the preceding sentence, be subject to this section, the Office of Personnel Management shall by regulation prescribe what hours shall be deemed to be hours of work and what hours of work shall be deemed to be overtime hours for the purpose of such section 7 so as to ensure that no employee receives less pay by reason of the preceding sentence.

The effect of section 5542(c) was to "eliminate[] the need to calculate and compare an FLSA nonexempt employee's overtime pay entitlement under two laws in order to pay the greater overtime benefit. Instead, employees who are nonexempt under the FLSA of 1938, as amended, always receive overtime pay under FLSA as provided in part 551 of title 5, Code of Federal Regulations." Aaron, 56 Fed. Cl. at 102 (quoting Pay Administration Under the Fair Labor Standards Act; Overtime Pay Provisions, 57 Fed. Reg. 59,277 (Dec. 15, 1992)).

Relying on Aaron for the proposition that the FLSA governs overtime compensation for non-exempt employees, the appellants argue that section 5542(c) prohibits the SSA from granting compensatory time to them because the FLSA does not authorize federal agencies to grant compensatory time in lieu of overtime pay. We reject that argument for two reasons. First, the appellants' understanding of the line between the FLSA and FEPA conflicts with the plain language of section 5543 of FEPA, which permits agencies to grant their employees compensatory time. Section 5543 states:

> (a) The head of an agency may—
> (1) on request of an employee, grant the employee compensatory time off from his scheduled tour of duty instead of payment under section 5542 or section 7 of the Fair Labor Standards Act of 1938 for an equal amount of time spent in irregular or occasional overtime work; . . . .

Although section 5542(c) provides that non-exempt employees should be paid overtime compensation under the FLSA rather than under FEPA, section 5543 explicitly states that compensatory time can be granted instead of payment "under . . . section 7 of the Fair Labor Standards Act of 1938." That language was inserted in section 5543 by FEPCA, making clear that Congress did not intend to prevent agencies from granting compensatory time under section 5543 to non-exempt employees when it added subsection (c) to section 5542. Second, section 5542(c) simply states that subsection (a) does not apply to employees who are covered by the FLSA. It does not limit section 5543 or any other provisions that address overtime compensation for federal employees. The trial court therefore correctly determined that the SSA had authority to grant compensatory time to the appellants.

The appellants also rely on section 5542(c) in arguing that the FLSA prohibits agencies from granting credit hours to non-exempt federal employees. The appellants' argument, however, is directly contrary to the Federal Employees Flexible and Compressed Work Schedules Act of 1982, 5 U.S.C. §§ 6120-6133. That Act authorizes agencies to establish programs that allow the use of flexible schedules in which employees are granted credit hours for working during certain designated hours. Id. § 6122(a). Employees may use their credit hours "to vary the length of a workweek or workday" and are generally not entitled to compensation for credit hours. Id. §§ 6121(4), 6123(b); 5 C.F.R. § 551(6). Furthermore, 5 U.S.C. § 6121(6) specifically states that credit hours are not to be considered overtime hours. The only instance in which an agency may provide monetary compensation for credit hours is when an employee ends participation in a flexible work schedule program. 5 U.S.C. § 6126(b).

rate not less than one and one-half hours for each hour of employment." Congress instead worded section 5543 in a manner that indicates that compensatory time for federal employees is to be granted on an hour-for-hour basis. Second, Congress could have simply included federal employees under section 207(o). Instead, the FLSA delegates to the OPM the task of determining how to apply the FLSA to non-exempt federal employees. 5 U.S.C. § 204(f).

Under the authority of that delegation, OPM has issued a regulation allowing agencies to grant compensatory time off "for an equal amount of irregular or occasional overtime work." 5 C.F.R. § 551.531(a). For employees on a flexible work schedule, OPM specified that compensatory time could be granted "instead of payment under § 551.501 of this part for an equal amount of overtime work, whether or not irregular or occasional in nature." Id. § 551.531(b). Those provisions are consistent with the language of section 5543, and they unambiguously show that OPM intended the amount of compensatory time granted to a federal employee to equal the amount of overtime work the employee performed, rather than the amount of overtime pay that the employee would otherwise be entitled to receive. We therefore reject the appellants' argument that the amount of compensatory time the SSA granted to them was inadequate.

Finally, the appellants argue that, when the SSA entered into the National Agreement, the government waived its right to provide employees with compensatory time or credit hours on an hour-for-hour basis. We reject that argument because, as discussed above, federal employee benefits and pay are governed by statute, not by contract. See Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004) ("courts

have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel.").

C

We note that nothing in this decision deprives the appellants of any rights they enjoy under the FLSA. The appellants were and are free to elect to receive monetary compensation for their overtime at a rate of one and one-half times their regular rate of pay instead of using their compensatory time for time off from work. See 5 C.F.R. § 551.531(e) ("The dollar value of compensatory time off when it is liquidated . . . is the amount of overtime pay the employee would have received for the hours of the pay period during which compensatory time off was earned by performing overtime work."). They have therefore not been deprived of the benefit that the FLSA confers. Nevertheless, they argue that the alternative benefit—compensatory time—is not as favorable as they believe it should be. For that contention, however, they have provided no persuasive statutory or regulatory support. To the contrary, Congress (through section 5543) and OPM (by regulation) have enabled federal non-exempt employees to opt for compensatory time as opposed to time-and-a-half monetary compensation for overtime, but have limited the compensatory time to an hour-for-hour basis. The trial court was therefore correct in dismissing the appellants' claims.

AFFIRMED.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 3/17/08